MARC J. FAGEL (Cal. Bar No. 154425)
MICHAEL S. DICKE (Cal. Bar No. 158187)
JINA L. CHOI (Admitted in New York)
   choij@sec.gov
JENNIFER J. LEE (Cal Bar No. 261399)
   leejen@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, 26th Floor
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV 12 1743 HRL |
| Plaintiff, | COMPLAINT |
| v. | |
| BENEDICT VAN, HEREUARE, INC., and ECITY, INC. | |
| Defendants. | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## SUMMARY OF THE ACTION

1. Defendant Benedict Van raised over $7 million for his two Silicon Valley Internet start-ups by promising investors that the companies were on the verge of undergoing successful IPO's and were well on their way to becoming the next Google. In reality, neither company had any significant business or any realistic prospect of going public, and the investors' funds were ultimately lost.

2. Van is the founder of hereUare, Inc. (a search engine development company) and eCity, Inc. (a company purportedly developing online virtual cities). Van raised funds for the companies from more than 100 largely inexperienced investors in California and Illinois. During investor presentations made in 2007 and 2008, Van made serial misrepresentations about the companies' prospects, claiming, among other things, that: (i) both companies would soon

Complaint
SEC v. Van et al.
Case No.

1

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

conduct IPOs (e.g., "within six months to a year") with skyrocketing stock prices; (ii) the companies had lucrative patents and contracts that would generate millions in revenue; and (iii) Van, as a wealthy venture capitalist who had previously conducted IPOs, had the requisite experience and contacts to take the companies public. None of these claims was true.

3. In reality, hereUare and eCity were years from even considering a public offering and had taken only the most rudimentary steps toward generating revenue in 2007 and/or 2008. The companies had no revenue-generating contracts, were still developing and testing their products, and relied solely on sales of their stock to fund business operations. Moreover, despite Van's claims of IPO experience and great wealth, he in fact had no such credentials or financial resources.

4. hereUare alone raised over $6.2 million through private placements of its stock to more than 100 investors in California and Illinois. None of these sales of hereUare stock were properly registered with the Commission. eCity raised over $800,000 from investors through private placements of its stock to approximately 20 investors in California, Illinois, and Missouri.

5. The Commission brings this action to enjoin Van, hereUare, and eCity from further violations of the antifraud provisions of the federal securities laws, and to enjoin Van and hereUare from further violations of the registration provisions of the federal securities laws. The Commission also seeks disgorgement and prejudgment interest, civil monetary penalties, and an officer and director bar against Van.

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Section 20(b) and (d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77t(b)] and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78u(d) and 78u(e)].

7. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. §78v(a)] and Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), and 78aa]. Defendants, directly or indirectly, have made use of the means and

Complaint
SEC v. Van et al.
Case No.

2

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

1   instrumentalities of interstate commerce or of mails in connection with the acts, transactions,
2   practices, and courses of business alleged in this complaint.

3       8.    Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15
4   U.S.C. § 77v] and Section 27 of the Exchange Act [15 U.S.C. §78aa]. Defendants all reside
5   and/or transact business in the Northern District of California.

6       9.    This action has been filed in the San Jose Division according to Civil Local Rule
7   3-120(d) because a substantial portion of the events that give rise to the claims occurred in Santa
8   Clara County.

## DEFENDANTS

10.    **Benedict Van**, age 51, resided at an Extended Stay Hotel in San Jose, California as of October 2011 and currently has no known address. At all relevant times, Van founded and controlled both hereUare and eCity. In testimony before the Commission, Van asserted his Fifth Amendment privilege against self-incrimination in response to questions regarding hereUare and eCity and his investment-raising activities.

11.    **hereUare, Inc.** is a Delaware corporation based in Santa Clara, California, and later, in Palo Alto, California in 2007 and 2008. hereUare currently has no business operations. Van controlled hereUare at all relevant times.

12.    **eCity, Inc.** is a Delaware corporation based in Palo Alto, California in 2008. eCity currently has no business operations. Van controlled eCity at all relevant times.

## FACTUAL ALLEGATIONS

**A. Through Misrepresentations About hereUare's Progress Toward An IPO And Revenue Growth, Van Raised Over $6.2 Million From Investors**

13.    In or about 1997, Van founded hereUare under the name "PeopleNet International Corporation" ("PeopleNet") in Santa Clara, California as an Internet company. From at least December 2006, PeopleNet (and later, hereUare) purported to provide Internet telecommunications services, including a search engine, email messaging, and online classifieds. On or about March 26, 2007, PeopleNet changed its official name to "hereUare, Inc."

Complaint                                          3            Securities and Exchange Commission
SEC v. Van et al.                                                      44 Montgomery Street, 26th Floor
Case No.                                                                     San Francisco, CA 94104
                                                                                          Telephone: (415) 705-2500

14. From at least January 2007 through December 2008, Van raised in excess of $6.2 million from individual investors through private placements of hereUare stock. In soliciting investments, Van drove three hours from hereUare's offices in Silicon Valley to hold investor presentations approximately every other week before groups of investors (including a couple who resided in Illinois) at people's homes near Sacramento, California and/or Stockton, California. Many of the investors were inexperienced in finance and/or investing.

15. To entice investors to purchase shares in hereUare, Van verbally delivered a standard "IPO within months" pitch that falsely portrayed hereUare as being on the verge of becoming a highly successful, publicly traded Internet company. As part of the solicitation, Van orally misrepresented to investors that:

   a. hereUare would "go public or sell" within a short period of time that ranged from specific quarters (e.g., "Q1 or Q2 2008," "Q3 or Q4 2008"), "six months to a year," and/or "after August 2008";

   b. The IPO was "a done deal";

   c. Goldman Sachs would underwrite the offering and was already preparing the necessary filings;

   d. A large established law firm with offices in Silicon Valley would provide legal services in connection with the IPO; and/or

   e. Investors should buy shares quickly at the "discounted" and/or "friends and family" offer of $9 per share before the stock price increased first to $18 per share for institutional investors and later, to $100 per share on the first trading day of hereUare's stock. Van showed investors Google's stock price chart and led them to believe that they would soon reap millions comparable to the IPO returns seen by investors in Google and/or Baidu (a large Chinese search engine company that went public in or about 2005).

16. Van's statements regarding hereUare's progress toward an IPO were false and misleading. First, Goldman Sachs never entered into any relationship with hereUare. Second,

Complaint
SEC v. Van et al.
Case No.

4

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

hereUare retained a law firm solely for services in connection with the private placements of its stock – and not for an IPO. Third, hereUare had no plan to go public in 2007 or 2008 and in fact failed to generate revenue while incurring several hundreds of thousands of dollars in operating costs. In order to stay in business, hereUare relied on investor funds as its sole source of operating income.

17. To further convince investors that hereUare's IPO would be hugely successful, Van falsely claimed that hereUare was immediately poised to realize millions of dollars in revenue from its products, contracts, and patents. Among other things, Van verbally misrepresented to investors that:

    a. hereUare would be "the next Google," and its search engine was "three times more powerful" than Google's version;

    b. hereUare had signed a lucrative deal with China Education Research Network ("CERNET"), a large student network sponsored by the Chinese government, that would secure millions of users; and/or

    c. hereUare held valuable Wi-Fi patents that would generate millions of dollars in royalties from large companies such as Starbucks, Cisco, AT&T, and T-Mobile that Van claimed had infringed its patents.

18. Van's statements regarding hereUare's revenue growth were false and misleading. In 2007 and 2008, hereUare was primarily focused on developing and testing its products for a market launch and had no revenue-generating contracts (whether for its products, patents, or otherwise). Indeed, hereUare never entered into a contract with CERNET; nor did hereUare evaluate its patents for potential royalties until 2009 (at which point, Van learned the patents had no value).

19. Van also made oral misrepresentations to investors regarding his personal background, falsely claiming that he was a highly successful, wealthy venture capitalist with prior IPO experience. In reality, Van had no such credentials.

Complaint
SEC v. Van et al.
Case No.

5

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

20. In making misrepresentations while soliciting investments for hereUare, Van acted with scienter. In particular, Van knew, or was reckless in not knowing, that his statements to investors regarding hereUare's progress toward an IPO and revenue growth were false and misleading. Van controlled hereUare at all relevant times and had full visibility into its finances, business development opportunities, and operations. Van also knew, or was reckless in not knowing, that his statements to investors regarding his background were false and misleading.

**B. Through Substantially Similar Misrepresentations About eCity's Prospects For An IPO And Revenue, Van Raised Approximately $880,000**

21. In or about March 2008, Van founded eCity, Inc. ("eCity") as an Internet company. While still a nascent concept, eCity purported to provide online shopping worlds that represented virtual versions of real cities (e.g., San Francisco and New York). In these virtual cities, eCity users would be able to click on representations of stores in their actual locations and thereafter be directed to the stores' retail websites.

22. From at least June 2008 through November 2008, Van raised approximately $880,000 from investors (including one individual who resided in Illinois, and another who resided in Missouri) through private placements of eCity stock. As he did with hereUare investor presentations, Van drove from eCity's offices (which were shared with hereUare) to people's homes in Sacramento and Stockton to hold eCity presentations. Many of the investors had already invested in hereUare.

23. During presentations, Van verbally delivered a substantially similar "IPO within months" pitch regarding eCity to potential investors. In particular, Van orally misrepresented to investors that eCity would be conducting an IPO in August 2008, that eCity's IPO would be "bigger" than hereUare's IPO, and that he had the requisite experience and wealth to take eCity public. Van also falsely told investors that eCity's products would be launching within a few months and that large companies such as Anheuser Busch had already signed contracts with eCity.

Complaint
SEC v. Van et al.
Case No.

6

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

24. Van's statements regarding eCity's progress toward an IPO and/or revenue growth were false and misleading. Indeed, eCity had no plan to conduct an IPO or launch its products in 2008, and otherwise had no revenue-generating contracts (with Anheuser Busch or otherwise).

25. Van knew, or was reckless in not knowing, that his statements to investors regarding eCity's progress toward an IPO and/or revenue growth were false and misleading. Van controlled eCity at all relevant times and had full visibility into its finances, business development opportunities, and operations.

### C. After The Purported "IPO Dates" For hereUare And eCity Passed, Van Continued To Mislead And Misdirect Investors

26. By the end of 2008 and/or early 2009, Van exhausted all of the investor funds he raised (i.e., more than $7 million) on operating expenses for hereUare and/or eCity, including payroll and rent. At this point in time, the purported IPO dates had passed for both hereUare and eCity, but the companies had not gone public, failed to capitalize on any business prospects for revenue, and ultimately shut down business operations.

27. Upon receiving several investor inquiries regarding the status of hereUare and/or eCity, Van continued to mislead and misdirect investors with baseless explanations for why the companies had not gone public. On certain occasions, Van orally told investors that large companies such as Microsoft, Cisco, and/or Ask.com were willing to purchase hereUare. On other occasions, Van verbally misrepresented to investors that former employees had misappropriated millions of dollars from hereUare, and, in that process, irreparably delayed the plan for either hereUare and/or eCity to go public.

28. Van's purported "explanations" for why the companies had not gone public were false. In the first instance, neither hereUare nor eCity had any plan to conduct an IPO in 2007 or 2008. Moreover, there were no negotiations between hereUare and Microsoft, Cisco, and/or Ask.com for a potential acquisition. Nor did former employees at hereUare misappropriate millions of dollars from the company.

Complaint
SEC v. Van et al.
Case No.

7

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

### D. hereUare Sold In Excess Of $6.2 Million In Stock In Violation Of Offering Registration Requirements

29.   In 2007 and 2008, hereUare sold in excess of $6.2 million in stock to over 100 investors in California and Illinois. In soliciting investments, hereUare employed a "word of mouth" approach in inviting potentially hundreds of investors to presentations. hereUare did not have a pre-existing relationship with many of the investors and did not perform any due diligence on the investors.

30.   Despite hereUare's lack of due diligence, Van knew, or was reckless in not knowing, that many of hereUare's investors were unaccredited and/or unsophisticated. Among other things, Van knew that investors pooled together their funds to meet the $25,000 minimum investment because they lacked money. Van also made comments noting that he wanted to "help lower and middle-class families" by permitting them to invest and that he hoped to be able to hire them as hereUare employees.

31.   The federal securities laws require issuers to file a registration statement with the Commission for any securities that are offered or sold to the public, unless an exemption from registration applies. The registration statement, which includes information about the securities for sale and the issuer, seeks to ensure that investors receive complete, accurate, and material information before they invest.

32.   In 2007 and/or 2008, hereUare did not file a registration statement with the Commission, and no exemption from registration applies to its stock sales.

### FIRST CLAIM FOR RELIEF

#### (Violations of Section 17(a)(2) of the Securities Act by All Defendants)

33.   The Commission hereby incorporates paragraphs 1 through 32 by reference.

34.   Van, hereUare, and/or eCity have, by engaging in the conduct set forth above, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or of the mails, obtained money or

SEC v. Van et al.
Case No.

8

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

OK:

property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading.

35. By reason of the foregoing, Van, hereUare, and/or eCity have directly or indirectly violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)], and unless enjoined will continue to violate this provision.

## SECOND CLAIM FOR RELIEF

(Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) Thereunder by All Defendants)

36. The Commission hereby incorporates Paragraphs 1 through 32 by reference.

37. Van, hereUare, and/or eCity, by engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter, made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48. By reason of the foregoing, Van, hereUare, and eCity have directly or indirectly violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. §§ 240.10b-5(b)] thereunder and unless restrained and enjoined will continue to violate these provisions.

## THIRD CLAIM FOR RELIEF

(Violations of Sections 5(a) and 5(c) of the Securities Act by Van and hereUare)

49. The Commission hereby incorporates Paragraphs 1 through 32 by reference.

50. Van and hereUare have, by engaging in the conduct set forth above, directly or indirectly, through use of the means or instruments of transportation or communication in interstate commerce or of the mails, offered to sell or sold securities or carried or caused such

Complaint
SEC v. Van et al.
Case No.

9

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

securities to be carried through the mails or in interstate commerce, for the purpose of sale or delivery after sale.

51. No registration statement was filed with the Commission or was in effect with respect to the securities offered by Van and hereUare prior to the offer or sale of these securities.

52. By reason of the foregoing, Van and hereUare have directly or indirectly violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)], and unless restrained and enjoined will continue to violate these provisions.

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Permanently enjoin Van, hereUare, and eCity, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a)(2) of the Securities Act, [15 U.S.C. § 77q(a)], and Section 10(b) the Exchange Act, [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5] thereunder.

### II.

Permanently enjoin Van, hereUare, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Sections 5(a) and 5(c) of the Securities Act, [15 U.S.C. §§ 77e(a) and 77e(c)].

### III.

Order Van to pay civil money penalties pursuant to Section 20(d)(1) of the Securities Act [15 U.S.C. § 77t(d)(1)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

### IV.

Order Van to disgorge his ill-gotten gains in an amount according to proof, plus prejudgment interest thereon.

//

Complaint
SEC v. Van et al.
Case No.

10

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500

V.

Permanently enjoin Van from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VII.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

Dated: April 9, 2012                    Respectfully submitted,

MARC J. FAGEL
MICHAEL S. DICKE
JINA L. CHOI
JENNIFER J. LEE

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

Complaint
SEC v. Van et al.
Case No.

11

Securities and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 705-2500